# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DANNY BLOUNT, #214481

                  Petitioner,                  Case Number: 2:09-CV-10885

v.                                         HONORABLE GERALD E. ROSEN

CARMEN PALMER,

                  Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Danny Blount has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is currently incarcerated at the Cooper Street Correctional Facility in Jackson, Michigan. He claims that the prosecution failed to produce a *res gestae* witness, insufficient evidence was presented to sustain his convictions, right of confrontation violated, improper jury instructions, right to a fair trial violated by joint trial, and ineffective assistance of counsel. For the reasons set forth below, the Court denies the petition.

## I. Facts

The Michigan Court of Appeals summarized the facts leading to Petitioner's convictions as follows:

> On the evening of December 9, 2005, Ronald Fields, Robin Gallagher, Brian Curry, and Kathryn Sawinski gathered at a house in Hamtramck where Fields and Gallagher each rented rooms. They stayed up all night

playing cards and using drugs.  At about noon on December 10, 2005,
Fields and Gallagher left the house to buy crack cocaine and some
convenience items.  Gallagher testified that they purchased $30 worth of
crack cocaine.  Curry and Sawinski stayed at the house.  When Fields and
Gallagher were gone, defendants Blount and Hudson arrived at the house.
They entered without permission and began searching the bedrooms.  When
Sawinski confronted Hudson, he yelled at her and ordered her into Fields'
room.  Hudson then entered the room, hit Sawinski in the face, and took
$21 from Curry's pockets.  Blount and Hudson told Sawinski and Curry
that Gallagher owed them money.  They threatened to harm Curry and
Sawinski if Gallagher did not have the money when she returned.

When Fields and Gallagher returned, Blount and Hudson demanded money.
Apparently, Gallagher entered Fields' bedroom, followed by both Blount
and Hudson.  Fields stood near the doorway between his bedroom and the
kitchen.  Hudson and Gallagher began arguing and Hudson hit Gallagher in
the face.  Hudson also grabbed Fields by the throat and punched him in the
face.  Blount and Hudson went through Fields's pockets looking for money
and Blount took the crack cocaine that Fields had just purchased.  At this
time, Hudson and Blount had a steel pipe, which they apparently passed
back and forth to brandish.

[Crystal Lynn] Vivoda arrived at the house at some point after Blount and
Hudson arrived.  When Vivoda arrived, she also threatened a "blood bath"
if someone did not come up with the money that Gallagher allegedly owed
Blount.  Blount wanted Gallagher to call her payee and get the money.
Because there was no telephone in the house, Blount took Fields's truck
keys and drove Gallagher to a pay telephone.

At the pay telephone, Gallagher stopped a police car and told the officers
about the assault.  When Blount and Gallagher were gone, Vivoda and
Hudson continued to threaten the remaining victims and to beat Fields with
the pipe.  When Vivoda noticed the police car arrive, she and Hudson left
the house.  Blount had walked back to the house after the police stopped
him.  The other victims confirmed Gallagher's story, and the police stopped
and arrested all three defendants soon thereafter.

*People v. Blount*, No. 270875, 2007 WL 4548042, *1-2 (Mich. Ct. App. Dec. 27, 2007).

2

## II.  Procedural History

Following a jury trial in Wayne Court Circuit Court, Petitioner was convicted of armed robbery of Ronald Fields, assault with intent to rob while armed against Robin Gallagher, unarmed robbery of Brian Curry, assault and battery of Kathryn Sawinski, larceny in a building, and unlawful use of a motor vehicle.  He was tried jointly before a single jury with Tyrone Hudson and Crystal Vivoda.

Petitioner filed an appeal of right in the Michigan Court of Appeals.  He raised these claims:

I.      Did the prosecutor deny defendant a fair trial by failing to produce an endorsed, *res gestae* witness at trial; counsel was ineffective for filing to demand the witness's presence or to attempt to introduce his preliminary examination testimony?

II.     Was the evidence insufficient to find defendant guilty beyond a reasonable doubt of unarmed robbery or assault with intent to rob either as principal or an aider and abetter, and the absence of the complainant at trial denied defendant his right of confrontation?

III.    Was defendant denied his right to a fair trial, his right to a defense, and his right to a properly instructed jury by the lack of instruction on the claim of right defense?

IV.     Was defendant denied a fair trial by being tried jointly with two codefendants and trial counsel was ineffective in failing to move for severance?

Petitioner also filed a motion to remand for an evidentiary hearing on his first claim.  The Michigan Court of Appeals denied the motion to remand, *People v. Blount*, No. 270875 (Mich. Ct. App. Aug. 30, 20070, and affirmed Petitioner's convictions. *People v. Blount*, No. 270875, 2007 WL 4548042 (Mich. Ct. App. Dec. 27, 2007).

3

Petitioner filed an application for leave to appeal in the Michigan Supreme Court.

He raised the same claims raised in the Michigan Court of Appeals.  The Michigan

Supreme Court denied leave to appeal.  *People v. Blount*, 481 Mich. 877 (Mich. May 27,

2008).

Petitioner then filed the pending habeas petition.  He raises the same claims raised

on direct review in state court.

### III.  Legal Standard

Petitioner's claims are reviewed against the standards established by the

Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat.

1214 (AEDPA).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim –
>
> (1)      resulted in a decision that was contrary to, or involved an
>          unreasonable application of, clearly established Federal law,
>          as determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable
>          determination of the facts in light of the evidence presented in
>          the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a

rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

'confronts a set of facts that are materially indistinguishable from a decision of [the

4

Supreme] Court and nevertheless arrives at a result different from [this] precedent.'"
*Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*,
529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute
permits a federal habeas court to 'grant the writ if the state court identifies the correct
governing legal principle from [the Supreme] Court but unreasonably applies that
principle to the facts' of petitioner's case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)
(*quoting Williams*, 529 U.S. at 413).  However, "[i]n order for a federal court to find a
state court's application of [Supreme Court] precedent 'unreasonable,' the state court's
decision must have been more than incorrect or erroneous.  The state court's application
must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations
omitted); *see also Williams*, 529 U.S. at 409.  "A state court's determination that a claim
lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'
on the correctness of the state court's decision."  *Harrington v. Richter*, __ U.S. __, 131
S. Ct. 770, 789 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).
"Section 2254(d) reflects the view that habeas corpus is a guard against extreme
malfunctions in the state criminal justice systems, not a substitute for ordinary error
correction through appeal. . . . As a condition for obtaining habeas corpus from a federal
court, a state prisoner must show that the state court's ruling on the claim being presented
in federal court was so lacking in justification that there was an error well understood and
comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.*
at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

6

## IV.  Discussion

### A. *Res Gestae* Witness

First, Petitioner argues that his right to a fair trial was violated when the prosecution failed to secure the presence of a *res gestae* witness, Brian Curry, one of the victims, who had been endorsed as a witness by the prosecution.  He further argues that his attorney was ineffective in failing to move the admission of Curry's preliminary examination testimony because, Petitioner argues, that testimony was not incriminating to him.

Under Michigan law, the prosecutor was obligated to produce Curry, *see People v. Wolford*, 189 Mich. App.  478, 473 N.W.2d 767, 770 (Mich. Ct. App. 1991) (per curiam), unless, despite the exercise of due diligence, he could not be produced.  *See People v. Canales*, 243 Mich. App. 571, 624 N.W.2d 439, 442 (Mich. Ct. App. 2000).  The Michigan Court of Appeals reviewed the steps taken to secure Curry's presence at trial and found that the state had exercised due diligence.

The state-law requirement that prosecutors produce *res gestae* witnesses is outside the scope of federal habeas review.  *Collier v. Lafler*, No. 09-1477, 2011 1211465, *4 (6th Cir. March 30, 2011).  *See also Atkins v. Foltz*, No. 87–1341, 1988 WL 87710, at *2 (6th Cir. Aug. 24, 1988) (per curiam) ("[A]lthough Michigan law requires the production of all *res gestae* witnesses, [federal] court cannot hear state claims on petition for writ of habeas corpus . . ." (internal citation omitted)).  To the extent that Petitioner instead asserts that the failure to secure Curry's presence for trial implicates his more general

right to call witnesses on his behalf, this claim is also meritless.  Petitioner does not argue

that the State prevented him from calling witnesses or that Curry's testimony was

excluded.  Instead, despite the substantial efforts of the police, Curry could not be located.

Accordingly, Petitioner's right to present a defense was not violated, and "the more

specific question of whether the prosecutor exercised 'due diligence' is outside the scope

of . . . AEDPA review."  *Collier*, 2011 1211465 at *4.

With regard to Curry's absence at trial, Petitioner argues that his attorney was

ineffective in failing to request a due diligence hearing and in failing to move that Curry's

preliminary examination testimony be read into the record at trial.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984),

governs claims of ineffective assistance of counsel.  *Towns v. Smith*, 395 F.3d 251, 258

(6th Cir. 2005).  To show a violation of the Sixth Amendment right to effective assistance

of counsel, a petitioner must establish that his attorney's performance was deficient and

that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  An

attorney's performance is deficient if "counsel's representation fell below an objective

standard of reasonableness."  *Id.* at 688.  The defendant must show "that counsel made

errors so serious that counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment."  *Id.* at 687.  "Judicial scrutiny of counsel's

performance must be highly deferential."  *Id.* at 689.  The Supreme Court has "declined to

articulate specific guidelines for appropriate attorney conduct and instead [has]

emphasized that the proper measure of attorney performance remains simply

8

reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, __ U.S. __, 130 S. Ct. 1473, 1485 (2010).

> [T]he *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689-90. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. . . . The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly"

so, *Knowles*, 556 U.S., at ___, 129 S.Ct. at 1420. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ___, 129 S.Ct. at 1420.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Richter*, __ U.S. __, 131 S. Ct. at 788.

The Michigan Court of Appeals held that counsel was not ineffective in her handling of Curry's absence.  Although not citing *Strickland,* the state court cited case law that plainly incorporated that standard.  First, the court held that Petitioner failed to overcome the presumption that counsel's decision not to admit Curry's preliminary examination testimony was a result of sound trial strategy.  The state court noted that while Curry's testimony may have been inconsistent in parts with the other victims' testimony, it also would have incriminated Petitioner.  The prosecution's theory was that Petitioner and Hudson were acting in concert and Petitioner was convicted of unarmed robbery with respect to Curry under an aiding and abetting theory.  Curry testified at the preliminary examination that Hudson hit another victim so fiercely that he almost knocked her jaw out and that he was scared when Hudson robbed him.  Thus, the state court concluded, counsel's decision not to admit Curry's testimony was presumed to be based upon a reasonable conclusion that the testimony would have been more harmful than helpful to Petitioner.  This Court finds that the state court's conclusion was a reasonable application of *Strickland*.  While select portions of Curry's testimony may

10

have contradicted other victims' testimony, on balance, Curry's testimony was not likely to benefit the defense in any way. Thus, counsel was not ineffective in failing to request Curry's testimony be read into the record.

Second, the Michigan Court of Appeals held that counsel's decision not to request a due diligence hearing regarding the efforts undertaken to produce Curry for trial was a matter of trial strategy. The Michigan Court of Appeals rejected Petitioner's claim that such a hearing was necessary because it would have entitled Petitioner to a missing witness instruction, allowing the jury to infer that Curry's testimony would have been unfavorable to the prosecution. The Michigan Court of Appeals reasoned that such a hearing could result in a finding that due diligence had been exercised, allowing the prosecution to introduce Curry's preliminary examination testimony, which, as discussed, was not particularly favorable to the defense. The Court agrees that it was reasonable for defense counsel not to request a due diligence hearing. Based upon the steps undertaken to locate and procure Curry's presence for trial, it seems likely that due diligence would have been found. It would not have benefitted the defense to introduce Curry's preliminary examination testimony. Thus, counsel's decision not to request a hearing was prudent trial strategy.

### B. Confrontation Clause Claim

Petitioner argues that the failure to produce witness Curry also violated his right of confrontation.

The Sixth Amendment provides, in relevant part, that "[i]n all criminal

11

prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI.  Here, the Confrontation Clause is not implicated because Curry did not testify at trial.  Further, "under federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner." *Atkins v. Foltz*, 856 F.2d 192, 1988 WL 87710, * 2 (6th Cir. Aug.24, 1988) (*citing United States v. Bryant*, 461 F.2d 912, 916 (6th Cir. 1972)).  As discussed, based on Curry's preliminary examination testimony, there is no basis for believing that he would have exculpated Petitioner.  Thus, the Court concludes that Petitioner was not denied his right of confrontation.

## C.  Jury Instruction Claim

Next, Petitioner argues that the trial court denied him his right to a properly instructed jury and his right to present a defense when it failed to *sua sponte* instruct the jury on a claim-of-right defense.  He also argues that counsel was ineffective in failing to request this instruction.

The Supreme Court has held that erroneous jury instructions in a state criminal trial are generally not reviewable in a habeas corpus proceeding unless the "instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).  Habeas review of state jury instructions is very narrow because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

12

The Michigan Court of Appeals explained a claim-of-right defense as follows:

A claim-of-right defense arises when a dispute exists regarding a defendant's felonious intent at the time of the taking. *People v. Cain,* 238 Mich. App. 95, 118-19; 605 N.W.2d 28 (1999). "[I]f a defendant had a good-faith belief that the defendant had a legal right to take the property at issue, then the defendant cannot be convicted because the defendant did not intend to deprive another person of property." *Id.* at 119. A claim-of-right defense applies even if the defendant's belief is mistaken or unreasonable. *Id.* "It is necessary, however, in all cases that the claim of right be a bona fide one and not a mere cover for a felonious taking. The taker's claim of right must be something other than a vague impression it must amount to an honest conviction." *People v. Karasek*, 63 Mich. App. 706, 713; 234 N.W.2d 761 (1975), *quoting* 52A CJS Larceny, §26, pp. 449-50.

*Blount*, 2007 WL 4548042 at * 4.

The evidence supporting a claim-of-right defense was testimony that Petitioner demanded money from some of the victims because Robin Gallagher owed Petitioner money. Petitioner and Hudson did not seek just to obtain money from Gallagher. Instead, they demanded money from each victim and threatened physical harm to the victims if they did not give them money. Petitioner wielded a pipe and threatened to use it against each of the victims if someone did not give him the money.

The state court of appeals determined that the record did not support a claim-of-right jury instruction because "the evidence presented at trial showed that Blount did not direct his threats and efforts to recover money solely at Gallagher, but threatened each victim and stole money and property from the other victims, and because Blount did not present evidence indicating that he had a bona fide good-faith belief that he was legally entitled to the money requested." *Id.* at *4. That finding is not an unreasonable

13

construction of the facts in this case, nor was the state court's decision not to give a claim-of-right instruction sua sponte contrary to or an unreasonable application of federal law. Furthermore, Petitioner was not prevented from presenting evidence to support a claim-of-right defense nor was his presentation of this testimony abridged in any way.

Additionally, the Michigan Court of Appeals held that because the evidence did not support a claim-of-right instruction, counsel was not ineffective in failing to request the instruction. The state court's decision was not contrary to or an unreasonable application of *Strickland*.

### D. Sufficiency of the Evidence

Petitioner next argues that insufficient evidence was presented to sustain his convictions for unarmed robbery of Brian Curry, armed robbery of Ronald Fields, and assault with intent to rob Robin Gallagher.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th

14

Cir. 2006), *quoting Jackson*, 443 U.S. at 324 n.16.

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010), *citing Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009).  First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, *citing Jackson,* 443 U.S. at 319.  Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*  "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003), *citing Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).  "A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, __ U.S. __, 130 S. Ct. 665, 674 (2010), *quoting Jackson*, 443 U.S. at 326.

### 1.  Brian Curry

First, Petitioner challenges the sufficiency of the evidence for his conviction of unarmed robbery as to Brian Curry.

15

To prove the offense of unarmed robbery under Michigan law, the prosecution must demonstrate that the defendant, during the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or assaults or puts the person in fear. Mich. Comp. Laws § 750.530. To prove aiding and abetting of a crime, a prosecutor must show: (1) that the crime charged was committed by the defendant or some other person; (2) that the defendant performed acts or gave encouragement which assisted in the commission of the crime; and (3) that the defendant intended the commission of the crime or had knowledge of the other's intent at the time he gave the aid or encouragement. *People v. Moore*, 470 Mich. 56, 67; 679 N.W.2d 41 (2004).

The Michigan Court of Appeals rejected Petitioner's argument that, because Curry did not testify, the jury could not conclude that Curry was in fear when Hudson took his money. The state court relied on the following facts in concluding that the jury could reasonably infer that Curry was placed in fear by Petitioner's and Hudson's actions: the two entered the house together and searched the bedrooms without consent; Curry was seated near Sawinski when Hudson punched her in the face; and immediately after witnessing Hudson strike Sawinski, Hudson reached into Curry's pockets and took his money. Additionally, the Michigan Court of Appeals found sufficient evidence that Petitioner aided or abetted Hudson in the robbery of Curry, reasoning:

> The evidence that Blount and Hudson were acting together (they both searched the bedrooms, demanded money, and threatened a "blood bath" if the money was not produced), and their statements clarifying that it did not

16

> matter who produced the money, viewed in a light most favorable to the
> prosecution, was sufficient to enable the jury to reasonably infer that Blount
> should have reasonably expected that the robbery of Curry was a natural
> and probable consequence of their intended procurement of money through
> the use of threats of violence.

*Blount*, 2007 WL 4548042 at *6.

Even though Curry did not testify, "a court may sustain a conviction based upon

nothing more than circumstantial evidence." *Stewart v. Wolfenbarger*, 595 F.3d 647, 656

(6th Cir. 2010). The trial testimony produced sufficient evidence from which a

reasonable trier of fact could find beyond a reasonable doubt that Petitioner aided and

abetted Hudson in the robbery of Curry. *See Jackson*, 443 U.S. at 319.

## 2. Ronald Fields

Next, Petitioner argues that the evidence was insufficient to establish an armed

robbery of Ronald Fields because the prescriptions were not taken directly from Fields or

in his presence and because there was not evidence that Petitioner was still carrying a

pipe when Petitioner took Fields' keys from him.

Under Michigan law, the elements of armed robbery as "(1) an assault, (2) a

felonious taking of property from the victim's person or presence, and (3) the defendant

must be armed with a weapon described in the statute." *People v. Johnson*, 206 Mich.

App. 122, 123, 520 N.W.2d 672, 673 (1994). The Michigan Court of Appeals although

not specifically citing *Jackson*, clearly applied the *Jackson* standard and held that

sufficient evidence was presented to sustain Petitioner's conviction, stating, in relevant

part:

17

The prosecution presented sufficient evidence to establish that Blount committed armed robbery of Fields' prescription forms. When Blount was arrested, officers found Fields' prescription forms on him. Fields claimed that the forms had been in his bedroom before the crimes in question occurred. According to the testimony presented at trial, Blount only entered Fields' room once when he was at the rooming house, and a reasonable juror could conclude that Blount found and took Fields' prescription forms at this time. Further, when Blount was in Fields' room, Hudson and Vivoda were also present, and Fields was standing in the doorway between his room and the kitchen. When the defendants entered Fields' room, they repeatedly demanded money and threatened to hurt the victims if they did not receive it. The defendants brandished a steel pipe in Fields' presence (apparently handing it to each other), while threatening the victims and later hitting Fields with the pipe. Accordingly, at the only point when Blount was in Fields' room and, therefore, had access to Fields' prescription forms, Fields was also either inside or in proximity to the room, and Blount both used and assisted the other defendants in using a steel pipe to threaten and force Fields to comply with their demands. Although Fields was not aware at the time that Blount had apparently taken his prescription forms, a victim's knowledge of the specific items taken is not an element of armed robbery. Accordingly, the prosecution presented sufficient evidence to support Blount's conviction for amred robbery.

*Blount*, 2007 WL 4548042 at *7.

Additionally, witness Robin Gallagher testified that Petitioner was threatening Fields with a pipe when Petitioner took the keys from Fields. Viewing the facts in the light most favorable to the prosecution, the trial testimony established that Petitioner committed the robbery and that he was armed when doing so. Accordingly, Petitioner is not entitled to federal habeas corpus relief on this claim.

### 3.  Robin Gallagher

Finally, Petitioner argues that the evidence was insufficient to support his conviction for the assault with intent to rob while armed of Robin Gallagher. Petitioner

18

argues that Gallagher owed him money and he therefore lacked the intent to rob her of her property and that the prosecution failed to present evidence that he was armed or that he intended to rob her.

Under Michigan law, the essential elements of assault with intent to rob while armed, are: "'(1) an assault with force and violence; (2) an intent to rob or steal; and (3) the defendant's being armed.'" *People v. Akins*, 259 Mich. App 545, 554; 675 N.W.2d 863 (Mich. Ct. App. 2003), *quoting People v. Cotton*, 191 Mich. App 377, 391; 478 N.W.2d 681 (Mich. Ct. App. 1991).

The Michigan Court of Appeals first rejected Petitioner's claim that he believed Gallagher owed him money and was seeking only that which was rightfully his.  The court of appeals reasoned that Petitioner did not assert a claim-of-right defense and such a defense was not supported by the record.  Additionally, in finding sufficient evidence of intent and that Petitioner was armed, the state court relied upon Gallagher's testimony that Petitioner was armed with a steel pipe when he ordered her to make a phone call to try to obtain money and that he told her there would be a "blood bath" if she did not come up with the money.

When assessing a sufficiency of the evidence claim on habeas review, the Court may not re-weigh evidence or redetermine witness credibility. *Marshall*, 459 U.S. at 434. According the state court's findings of fact a presumption of correctness, this Court concludes that the Michigan Court of Appeals' decision that sufficient evidence was presented for a finding of guilty did not "result[] in a decision that . . . involved an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Petitioner is not entitled to

federal habeas corpus relief with respect to this claim.

### E.  Joint Trial

Finally, Petitioner argues that he was denied a fair trial by being tried jointly with

two co-defendants and that his attorney was ineffective in failing to move for a separate

trial or a separate jury.

In support of his claim, Petitioner cites Michigan Court Rule 6.121 regarding

discretionary severance.  Whether the failure to grant severance violated state law is not

cognizable on habeas corpus review.  *Post v. Bradshaw*, 621 F.3d 406, 427 (6th Cir.

2010).  The relevant question on habeas review is whether the failure to sever the trials

impinged on Petitioner's right to due process of law.  *Davis v. Coyle*, 475 F.3d 761, 777

(6th Cir. 2007) (*citing Corbett v. Bordenkircher*, 615 F.2d 722, 724 (6th Cir. 1980)).  To

prove a due process violation, Petitioner must show that the joint trial "result[ed] in

prejudice so great as to deny [Petitioner] his . . . right to a fair trial."  *Id.* at 777 (*quoting*

*United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986)).  "Courts should grant a severance

'only if there is a serious risk that a joint trial would compromise a specific trial right of

one of the defendants, or prevent the jury from making a reliable judgment about guilt or

innocence.'"  *Stanford v. Parker*, 266 F.3d 458-59 (6th Cir. 2001), *quoting Zafiro v.*

*United States*, 506 U.S. 534, 539 (1993).  Joint trials "play a vital role in the criminal

justice system."  *Richardson v. Marsh*, 481 U.S. 200, 209 (1987).  The decision whether

20

to grant a motion for severance is within the trial judge's discretion, and an "alleged abuse of [that] discretion, without more, is not a constitutional violation." *Id.* "A defendant seeking severance must show substantial, undue, or compelling prejudice to a specific trial right." *Lang v. Gundy*, 399 F. App'x 969, 976 (6th Cir. 2010).

Petitioner rests his claim that he should not have been jointly tried with the co-defendants on the contention that certain testimony regarding Hudson's allegedly more culpable and violent conduct would not have been admissible in a separate trial. The Michigan Court of Appeals held that the evidence would have been admissible against Petitioner because the prosecution argued that Petitioner was guilty of the various offenses either as a principal or as an aider and abettor. In addition, the state court held that any risk of prejudice was allayed by the cautionary jury instructions "whereby the jury was instructed to determine guilty or innocence on an individual basis and was cautioned that each case must be considered and decided separately on the evidence as it applied to each defendant." *Blount*, 2007 WL 4548042 at *5. The state court further found that, because Petitioner was not entitled to severance, his attorney was not ineffective in failing to so move.

Petitioner has failed to show that the state court was incorrect in its conclusion that the testimony related to Hudson's actions would have been admissible in a separate trial. The state court did not unreasonably apply Supreme Court precedent in deciding this claim against Petitioner. *Lane*, 474 U.S. at 446, n. 8 (finding that improper joinder of defendants does not, in itself, violate the Constitution but that, only if the showing of

21

prejudice is of such magnitude as to deny a fair trial, will it rise to level of a constitutional violation).  Further, because Petitioner has not demonstrated a specific right infringed upon by the joint trial, the Court finds that the Michigan Court of Appeals did not unreasonably apply *Strickland* in concluding that counsel was not ineffective.  Habeas relief is denied on this claim.

## V.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).

The Court finds that jurists of reason would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted, and denies a certificate of appealability.

## VI.  Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas

22

corpus is **DENIED**.

It is **FURTHER ORDERED** that a certificate of appealability is **DENIED**.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  June 27, 2011

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 27, 2011, by electronic mail and upon Danny Blount, #214481, Lakeland Correctional Facility, 141 First Street, Coldwater, MI 49036 by ordinary mail.

<u>s/Ruth A. Gunther</u>
Case Manager